**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 9, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2024AP1730**

Cir. Ct. No.  **2023CV2378**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS DISTRICT IV**

---

**TRI-COUNTY PAVING INC.,**

   PETITIONER-APPELLANT,

 V.

**TOWN OF DANE TOWN BOARD, TOWN OF DANE,**
AND **DANE COUNTY ZONING AND LAND REGULATION COMMITTEE,**

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: JACOB B. FROST, Judge. *Affirmed.*

Before Graham, P.J., Nashold, and Taylor, JJ.

¶1      TAYLOR, J.  In this certiorari action, Tri-County Paving appeals the denial of a conditional use permit (CUP) by the Town of Dane and the Town of Dane Town Board (we refer collectively to these two entities as "the Town") to

operate a non-metallic mineral extraction facility (i.e., a quarry). Tri-County argues that, in denying its CUP application, the Town proceeded on an incorrect theory of law, failed to keep within its jurisdiction, and lacked substantial evidence, such that the Town's decision reflected its will and not its judgment.[1] We reject Tri-County's arguments and affirm.

## BACKGROUND

¶2 We recount the basic procedural facts below and add further factual detail as needed in our discussion.

¶3 On December 28, 2022, Tri-County submitted an application for a Dane County CUP to operate a quarry in the Town of Dane.[2] On March 28, 2023, the County's zoning and land regulation committee (the ZLR committee) voted to postpone action on the CUP application (or "the application") "due to no town action and public opposition." On April 6, 2023, the ZLR committee summarized the public's concerns and requested a response from Tri-County. The committee further noted that in order for the application to be granted, it needed to meet all eight standards in DANE COUNTY ORDINANCE § 10.101(7)(d)1. (March 31, 2023)

---

[1] Defendant Dane County Zoning and Land Regulation Committee (the ZLR committee or the committee) has filed an appellate brief opposing the remedy that Tri-County requests following a remand from this court. We do not address the committee's arguments because we conclude that Tri-County's certiorari action fails and it is not entitled to a remand. We mention the ZLR committee in the body of the opinion only for context.

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise indicated.

[2] Tri-County also applied for a reclamation permit. This appeal only relates to the denial of the conditional use permit, and we do not discuss the reclamation permit further.

("the ordinance").[3]   Tri-County submitted an addendum to its application on April 14, 2023 and subsequently provided additional materials, including a roadway review and a property appraisal.

¶4       Meanwhile, the Town, which had adopted the entirety of Chapter 10 of the Dane County Ordinances in March 2019, held a series of public meetings from March 2023 through August 2023 on the CUP application.[4]   During these meetings, the Town heard reports from the County's assistant zoning administrator and engineers hired by the Town and Tri-County.   The Town also heard from representatives of Tri-County and from members of the public.

¶5       At a public meeting on August 14, 2023, the Town voted to deny the CUP application, which was incorporated into a written denial on August 21, 2023.

¶6       In its oral and written decisions denying the CUP application, the Town concluded that the application met only one of the seven applicable conditions in the ordinance,[5] namely, "[t]hat the conditional use shall conform to

---

[3] We refer to the March 31, 2023 version of the Dane County Ordinances in effect when the Town denied the CUP application on August 14, 2023, unless otherwise noted.  The pertinent provisions of this version of the ordinances are identical to the pertinent provisions of the January 31, 2022 version of the ordinances in effect when Tri-County filed its CUP application on December 28, 2022, with the exception that the March 31, 2023 version allowed "any person aggrieved by the grant or denial of a conditional use permit [to] appeal the decision to the circuit court" instead of appealing to the Dane County Board of Adjustment as allowed under the January 31, 2022 version of the ordinance.  *See* DANE COUNTY ORDINANCE § 10.101(7)(c) 4.

[4] S*ee* DANE COUNTY ORDINANCE § 10.003(1)(a)11. (The Town of Dane adopted the entirety of Chapter 10 of the Dane County ordinances on March 4, 2019).

[5] The eighth condition in the ordinance applies only "[i]f the conditional use is located in a Farmland Preservation Zoning district."  *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.h. The Town's determination that this condition did not apply is not challenged on appeal, and we do not address it further.

all applicable regulations of the district in which it is located." *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.f.[6]

¶7 In its written decision, the Town set forth the following reasons why the CUP application did not meet the six remaining applicable conditions in the ordinance. First, the Town concluded that the application did not satisfy the condition requiring "[t]hat the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, comfort or welfare." *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.a. The Town explained that the road which would primarily serve the quarry was "dangerous in that there are no guard rails on the road, there is a steep decline on the west side of the road leading into the quarry, the road is not wide enough for two dump trucks to pass each other, the grades of the road are steep, and people walk the road for exercise on a regular basis." The Town further noted that Tri-County would not be able to enforce "the desired requirement that all trucks be tarped as the trucks leave the quarry" or "the speed limit of 30 mph." The Town also expressed concern that trucks would need to use jake brakes on the road.[7]

¶8 Second, the Town concluded that the CUP application did not satisfy the ordinance condition requiring "[t]hat the uses, values and enjoyment of other

---

[6] Tri-County argues in its reply brief that the Town's references to DANE COUNTY ORDINANCE § 10.101(7)(d) must be scrivener's error, and that the correct citation is DANE COUNTY ORDINANCE § 10.101(7)(h). Although the parties have not briefed this precise issue, our review of the applicable ordinances indicates that Tri-County is incorrect. In both the January 31, 2022 and the March 31, 2023 versions of the applicable sections of the Dane County Ordinances, the conditions that Tri-County must meet in order for the Town to grant a CUP are set forth in § 10.101(7)(d). It appears that Tri-County may be referring to a later version of the ordinances not applicable here.

[7] In its oral decision, the Town explained that jake brakes should not be used "because of the severe noise" the brakes make when applied.

property in the neighborhood … shall be in no foreseeable manner substantially impaired or diminished by establishment, maintenance, or operation of the conditional use." *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.b. The Town explained that "[t]he quarry as planned will change the atmosphere and the environment of the neighborhood considerably." In particular, the Town determined that the value and use of local properties would be negatively affected because "the quarry will produce significant noise and dust in an area that is presently quiet." The Town further noted that "[a]ll of the residents in the immediate area are opposed to the quarry," that they had "purchased property in this neighborhood because they did not want to be disturbed," and that the quarry "will have a negative impact on their lives."

¶9 Third, the Town concluded that the CUP application did not satisfy the ordinance condition requiring "[t]hat the establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district." *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.c. The Town explained that "[t]he area is generally used for crop production, woodlands and hunting purposes" and determined that a quarry would "disrupt wildlife in the area, significantly damage the hunting in the area and reduce the cropland production."

¶10 Fourth, the Town concluded that the CUP application did not satisfy the ordinance condition requiring "[t]hat adequate utilities, access roads, drainage and other necessary site improvements have been or are being made." *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.d. The Town explained that Tri-County's proposed stormwater and erosion control measures were satisfactory, but "the access roads are the significant concern at this time."

¶11     Fifth, the Town concluded that the CUP application did not satisfy the ordinance condition requiring "[t]hat adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets."  *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.e.  The Town based this determination on "the comments referenced above."[8]

¶12     Sixth, the Town concluded that the CUP application did not satisfy the ordinance condition requiring "[t]hat the conditional use is consistent with the adopted town and county comprehensive plans."  *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.g.  The Town explained that the quarry "is not consistent with the existing Comprehensive Plan for the Town of Dane," which envisioned that "the entire area in close proximity to the proposed quarry" would continue to be used for "agricultural and crop production" purposes.

¶13     Tri-County filed a certiorari action in the circuit court, which was denied.  Tri-County appeals.

## STANDARD OF REVIEW

¶14     In a certiorari action, we review the decision of the municipality, not the decision of the circuit court.  *See **State ex rel. Harris v. Annuity & Pension Bd.**, 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979).  When conducting a certiorari review of the Town's decision to deny the CUP application, our review is limited to four questions:

---

[8] During the Town's oral explanation of the fifth factor, the Town specifically identified that the proposed access roads were steep and narrow, along with "the other parts that we've talked about."

> (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Ottman v. Town of Primrose*, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411.[9] We apply a presumption of correctness and validity to a municipality's decision. *Id.*, ¶48. This presumption does not, however, "eviscerate[] meaningful review." *Id.*, ¶51. As the petitioner, Tri-County "bears the burden to overcome the presumption of correctness." *Id.*, ¶50.

¶15     We review questions of law independently of the municipality and the circuit court. *Id.*, ¶54. We do not "defer to a municipality's interpretation of a statewide standard." *Id.*, ¶59. We defer, however, to a municipality's interpretation of an ordinance when "the language was drafted by the municipality in an effort to address a local concern." *Id.*, ¶60. Accordingly, "applying a presumption of correctness, we will defer to the municipality's interpretation if it is reasonable." *Id.* "A municipality's interpretation of its own ordinance is unreasonable … if it is contrary to law, if it is clearly contrary to the intent, history, or purpose of the ordinance, or if it is without a rational basis." *Id.*, ¶62. A municipality's interpretation of its own ordinance is also unreasonable if it "directly contravenes the words of the ordinance." *Id.*

---

[9] For the purposes of our analysis, we discuss the second certiorari question of whether the Town proceeded on a correct theory of law prior to discussing the jurisdictional question.

**DISCUSSION**

¶16    Tri-County contends that the Town's denial of its CUP application fails on all pertinent certiorari standards. Specifically, as noted, Tri-County argues that the Town: proceeded on an incorrect theory of law by not identifying a legally adequate basis for denying the application; "exceed[ed] its municipal jurisdiction and its restricted discretionary authority"; and lacked substantial evidence for its denial such that the Town rendered a "decision manifesting its will to appease dissenting voices rather than a reasoned analysis of objective data or information."

¶17    Before addressing Tri-County's arguments, we first address, and reject, aspects of Tri-County's interpretation of 2017 Wis. Act 67, which underlies many of its arguments.

## I. Effect of 2017 Wis. Act 67

¶18    Tri-County's arguments that its CUP application should have been granted by the Town rely to a significant extent on its interpretation of 2017 Wis. Act 67, which created and amended various statutory standards and procedures for different zoning issues arising in counties, cities, and towns. *See generally* 2017 Wis. Act 67 ("Act 67" or "the Act"). Tri-County's arguments that the Town acted contrary to statute and beyond its discretion focus on three subsections of WIS. STAT. § 60.62(4e), which were created by the Act and govern CUPs issued by towns.[10] *See* 2017 Wis. Act 67, § 15[11] (creating § 60.62(4e)).

---

[10] Another section of Act 67 contains identical language for conditional use permits issued by counties. *See* 2017 Wis. Act 67, § 2 (creating WIS. STAT. § 59.69(5e); *see also* § 59.69(5e)(a)1. (defining "conditional use" as, among other things, "a use allowed under a conditional use permit … issued by a county …")). Because the language in these sections is

(continued)

¶19 The first applicable statutory subsection sets forth the standard for granting a CUP application. Specifically, "[i]f an applicant for a conditional use permit meets or agrees to meet all of the requirements and conditions specified in the town ordinance or those imposed by the town zoning board, the town shall grant the conditional use permit." WIS. STAT. § 60.62(4e)(b)1. This subsection further provides that "[a]ny condition imposed must be related to the purpose of the ordinance and be based on substantial evidence." § 60.62(4e)(b)1.

¶20 The second applicable statutory subsection addresses the nature of the requirements and conditions governing CUP applications, and also imposes a substantial evidence requirement on both applicants and towns:

> [t]he requirements and conditions described under subd. 1. must be reasonable and, to the extent practicable, measurable and may include conditions such as the permit's duration, transfer, or renewal. The applicant must demonstrate that the application and all requirements and conditions established by the town relating to the conditional use are or shall be satisfied, both of which must be supported by substantial evidence. The town's decision to approve or deny the permit must be supported by substantial evidence.

WIS. STAT. § 60.62(4e)(b)2.

¶21 The third applicable statutory subsection defines the term "substantial evidence" to "mean[] facts and information, other than merely personal preferences or speculation, directly pertaining to the requirements and

___

identical, our analysis is the same regardless of which provision was the basis for the denial in this case.

[11] Tri-County directs us to Section 16 of 2017 Wis. Act 67, but that section created WIS. STAT. § 62.23(7)(de), which pertains to "a conditional use permit … issued by a city." *See* § 62.23(7)(de)1.a.

conditions an applicant must meet to obtain a conditional use permit and that reasonable persons would accept in support of a conclusion." WIS. STAT. § 60.62(4e)(a)2.

¶22 Tri-County asserts that, when considering these three statutory subsections together, the plain language of WIS. STAT. § 60.62(4e) requires all municipalities, including the Town, to grant requested CUPs unless the municipality satisfies two elements: "(1) it presents a condition that is reasonable in nature, relates to the ordinance's purpose, is measurable, if possible, and based on non-preference, non-speculative facts and information directly pertaining to the condition that reasonable persons would accept; and it (2) finds based on substantial evidence that the permittee has not and will not satisfy said condition." Tri-County interprets these two elements as requiring that before a Town rejects a CUP application, the Town must propose additional reasonable conditions to an applicant to address any concerns of the Town and that the Town must base a decision that the applicant cannot meet the proposed conditions on substantial evidence. Tri-County alleges that because the Town failed to propose any conditions to Tri-County to address the Town's concerns, the Town's denial of its CUP application was "unlawful." For the following reasons, we reject Tri-County's arguments that in order for the Town to have lawfully rejected the CUP application, it must have proposed reasonable conditions to address its concerns.[12]

¶23 Although we agree that statutory interpretation "begins with the language of the statute" and "[i]f the meaning of the statute is plain, we ordinarily

---

[12] Because we conclude that Tri-County's interpretation of the first element is incorrect, we do not address the substantial evidence requirement in this section. Instead, we address Tri-County's interpretation of the substantial evidence requirement in Section IV of the text.

stop the inquiry," ***State ex rel. Kalal v. Circuit Court for Dane County***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110, we reject Tri-County's assertion that the plain language of WIS. STAT. §60.62(4e)(b)1. imposes such requirements in order for a Town's rejection of the CUP application to be lawful when the Town's rejection is based on a failure to comply with requirements of a town ordinance. In arguing that the Town was required to propose conditions to address its concerns, Tri-County overstates the extent to which 2017 Wis. Act 67 changed a municipality's evaluation of a CUP application. In particular, Tri-County overlooks statutory language providing that if the "applicant … meets or agrees to meet all of the requirements and conditions specified in the town ordinance *or* those imposed by the town zoning board, the town shall grant the conditional use permit." (Emphasis added.) *See* § 60.62(4e)(b)1. Tri-County cites no legal support for the proposition that a Town is required to give a CUP applicant additional opportunities to meet town ordinance requirements or to express a willingness to meet the ordinance requirements when the initial CUP application fails to do so, and we reject this argument as undeveloped. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped, including the lack of references to supporting legal authority). As we discuss in what follows, this is one of the bases for our rejection of Tri-County's argument that, in denying the CUP application, the Town did not proceed on a correct theory of law.

**II. The Theory of Law**

¶24  Tri-County makes three arguments that the Town did not proceed on a correct theory of law in denying the CUP application.[13]  Tri-County has failed to persuade us that the Town's approach to the CUP application was inconsistent with the text of WIS. STAT. § 60.62(4e) or otherwise the result of the application of an incorrect theory of law.

¶25  First, Tri-County contends that the Town erred when it listed perceived shortcomings of the CUP application regarding the ordinance's conditions, but failed to propose any conditions to close the perceived gap.  We have already rejected Tri-County's argument that WIS. STAT. § 60.62(4e) required the Town to propose additional conditions beyond those set forth in the ordinance before denying the application.

¶26  In further support of our conclusion, we note that the Town was applying the ordinance to determine whether the CUP application met or included an agreement to meet the applicable conditions specified in the ordinance.  *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.  As noted, the plain language of the statute makes clear that the "requirements and conditions" for evaluating a CUP application can either come from a town ordinance or be imposed by the town zoning board.  *See* WIS. STAT. § 60.62(4e)(b)1.  Here, it appears that the Town treated and applied the ordinance as a "local" ordinance, which, as noted, the Town had adopted previously.  In its reply brief, Tri-County does not refute the Town's characterization of the ordinance, and we therefore treat the ordinance as a

___

[13]  We note that Tri-County does not dispute the authority of the Town to deny the CUP application.

Town ordinance.[14] *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750 (appellant's failure to respond in a reply brief to argument made in a response brief may be taken as concession). The ordinance requires that in order to grant an application, the applicant must meet all of the enumerated conditions in the ordinance. *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1. ("Before approving any conditional use permit, the town board … must find that all of the conditions are met[.]"). As is noted and as advised by the Town's attorney, the Town considered each condition of the ordinance that Tri-County had to meet in order for the Town to approve the application and determined that out of the eight conditions set forth, Tri-County met only one condition, with one other condition being inapplicable and six other conditions not being met.

¶27 Therefore, we conclude that the Town did not apply an incorrect theory of law when it evaluated whether Tri-County's CUP application met or agreed to meet the applicable conditions in the ordinance.

¶28 Second, Tri-County argues that the "standards" in the ordinance do not rise to the level of "requirements or conditions" within the meaning of WIS. STAT. § 60.62(4e)(b)1. because the ordinance merely "prescribes generalized 'public good' standards to guide the Town's evaluation of a CUP." Tri-County further contends that "these vaguely worded criteria … serve as guideposts for determining appropriate conditions to craft and propose." The threshold problem

---

[14] Neither party explicitly states a position on whether the conditions considered by the Town in evaluating the CUP application are pursuant to a Town ordinance or conditions "imposed by the town zoning board" within the meaning of WIS. STAT. § 60.62(4e)(b)1. Although we follow the Town's lead and treat the ordinance as a Town ordinance, we note that we would reach the same conclusion if we treated the conditions as "imposed by the town zoning board."

with this line of argument is that we defer to the Town's interpretation of a local ordinance if it is reasonable. *See Ottman*, 332 Wis. 2d 3, ¶60. The ordinance expressly states: "Standards for Approval. Before approving any conditional use permit, the town board and zoning committee must find that all of the following *conditions* are met." DANE COUNTY ORDINANCE § 10.101(7)(d)1. (emphasis added). Thus, on their face, these so-called "standards" are also "conditions," and therefore Tri-County has not demonstrated that the Town's interpretation is unreasonable.

¶29 Indeed, Tri-County's appellate briefs fail to convince us that the Town's interpretation of the ordinance language is unreasonable.[15] Tri-County's arguments rely on sweeping generalizations about all eight conditions in the ordinance, with no attempt to articulate why each condition specified in the ordinance is too vague and amorphous to constitute a "requirement or condition" within the meaning of WIS. STAT. § 60.62(4e)(b)1. An undeveloped and conclusory argument that "conditions" enumerated in the ordinance cannot also be "requirements or conditions" within the meaning of § 60.62(4e)(b)1. is insufficient

---

[15] Tri-County contends that we must construe the statute "in the manner that most fully 'favors the free and unrestricted use of property.'" *See Forshee v. Neuschwander*, 2018 WI 62, ¶16, 381 Wis. 2d 757, 914 N.W.2d 643. The cited paragraph of *Forshee* states that "restrictions contained in deeds and in zoning ordinances must be strictly construed." *Id.* We see nothing in *Forshee* that permits us to look beyond the plain language of a statute to impose additional constraints on the manner in which municipalities interpret and apply their own ordinances.

14

to satisfy Tri-County's burden to overcome the presumption of correctness and validity afforded to a municipality's decision. *See Ottman*, 332 Wis. 2d 3, ¶50.[16]

¶30 In its reply brief, Tri-County also asserts that the conditions in the ordinance are "not requirements or conditions contemplated by Act 67" because "[t]hey contain no language directing CUP applicants to do anything." Tri-County does not make any effort to explain why the conditions enumerated in the ordinance that expressly direct CUP applicants to take steps to satisfy the ordinance conditions are insufficient under Act 67. For example, sub. d of the ordinance requires "[t]hat adequate utilities, access roads, drainage, and other necessary site improvements have been or are being made," while sub. e requires that "adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets." *See* DANE COUNTY ORDINANCE §10.101(7)(d)1.d.-e.

¶31 Third, Tri-County argues that the Town erred as a matter of law when it determined that the CUP application was not "consistent with the adopted town and county comprehensive plans."[17] *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.g. The relevant portion of the Town's comprehensive plan states:

---

[16] As stated, we do not defer to the Town's determination of whether the conditions set forth in the ordinance are consistent with WIS. STAT. § 60.62(4e)(b)2., which provides that the conditions "be reasonable and, to the extent practicable, measurable." *See Ottman v. Town of Primrose*, 2011 WI 18, ¶59, 332 Wis. 2d 3, 796 N.W.2d 411 (we do not defer to a municipality's interpretation of a statewide standard). However, we see no developed argument from Tri-County that any of the eight conditions specified in the ordinance fail to satisfy the statutory standard. Therefore, we do not further address this issue. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (this court may decline to consider conclusory and undeveloped arguments that are not adequately briefed).

[17] Tri-County asserts, without authority, that this criteria raises a "purely legal question."

> There are limited areas in Dane used for nonmetallic mineral extraction. The town might receive requests for new or expanded extraction sites over the planning period. Such uses are appropriate in the Agricultural Preservation Areas shown on Map 5 provided that they are properly sited and reclaimed per new state and county rules. Extraction activities are not generally compatible with residential uses and should be directed away from clusters of homesites or planned residential areas.

¶32    Tri-County argues that "there are no 'clusters of homesites' or 'planned residential areas' near the [quarry site], at least within the meaning of the Comprehensive Plan," because none of the "clusters of homesites" identified by the plan are near the quarry. On this point, Tri-County fails to persuade us that the Town applied an unreasonable interpretation of this subsection of the ordinance. Further, even if the Town's interpretation of this subsection was unreasonable, Tri-County's application failed to satisfy five other applicable ordinance conditions, and Tri-County has not overcome the presumption we apply that the Town's decision to deny the CUP application was correct and valid. *Ottman*, 332 Wis. 2d 3, ¶48.[18]

¶33    For the foregoing reasons, we conclude that Tri-County has failed to establish that the Town erred by applying an incorrect theory of law.

---

[18] In addition, Tri-County contends that the Town initially concluded that the condition that the CUP application be consistent with the Town's comprehensive plan was satisfied, but then "backtracked." Tri-County directs us to the hearing transcript where the Town board chair started the discussion of this condition, sub. f, of the ordinance by stating: "The proposed conditional use is consistent with adopted town and county comprehensive plans." A review of the full transcript shows that the board chair then proceeded to read each condition, verbatim, prior to discussion. Accordingly, Tri-County has taken the chair's comments and the verbatim reading of this condition out of context, and we reject Tri-County's argument on this point.

### III. Jurisdiction

¶34 We now examine Tri-County's argument that the Town exceeded its jurisdiction in denying the CUP application. Tri-County makes two arguments that the Town did not keep within its jurisdiction when it denied the CUP application. Tri-County's first argument is that WIS. STAT. § 60.62(4e) limits the Town's authority to deny an application prior to proposing reasonable conditions to address any concerns the Town may have had. We have already rejected the argument that the Town's application of the ordinance conditions was inconsistent with § 60.62(4e), and the same rationale applies here in rejecting Tri-County's argument.

¶35 Second, Tri-County contends that the Town acted "ultra vires with respect to the road safety rationales for denial." Specifically, in concluding that Tri-County's CUP application did not satisfy the conditions in the ordinance, the Town focused in large part on the inadequacy of the access roads that trucks would use to come and go from the quarry. Tri-County contends that the roads at issue "all fall within the Town of Vienna's jurisdiction, not the Town of Dane's."[19] Through a separate application process that is not part of this record, Tri-County successfully obtained a CUP from the Town of Vienna to use specific access roads for trucks coming and going from the quarry. Tri-County contends that because the Town of Vienna had already determined that Tri-County's proposed conditions were "sufficient to protect [public] safety on those roads," the Town of Dane is prohibited from considering road safety when reviewing whether the CUP

---

[19] Tri-County's record citations for this proposition establish only that the access roads are maintained by the Town of Vienna.

17

application satisfies the conditions in the ordinance. Accordingly, Tri-County argues that any rationales for denial that relate to the lack of "guardrails, topography, width, grade, pedestrian traffic, truck tarping, speed limit enforcement, and jake braking … should be entirely disregarded as a matter of law."

¶36 We reject Tri-County's argument because it cites no supporting legal authority for the proposition that another municipality's approval of a conditional use of a road prevents the Town from considering the effect of the conditional use of that road on Town residents. Indeed, the Town argues that Town of Dane residents live on or near the main access road and would be directly affected by the proposed quarry. Moreover, the ordinance requires the Town "to consider the access roads and the impact on traffic and traffic-related safety." *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1. Because Tri-County bears the burden of overcoming the presumption that the Town's decision to deny the application is correct, *see Ottman*, 332 Wis. 2d 3, ¶50, we conclude that Tri-County's failure to develop its argument with legal authority means that it has not carried its burden.[20]

## IV. Substantial Evidence

¶37 We next consider, and reject, Tri-County's final argument that the Town lacked substantial evidence in denying the CUP application.

---

[20] Tri-County concedes that "immediate ingress and egress from the property to [the access road] is colorably within the Town's jurisdiction," but it also contends that "no basis for the denial raised on appeal directly pertains to that narrow ingress and egress issue." The applicable ordinance condition addresses "traffic congestion in the public streets," *see* DANE COUNTY ORDINANCE § 10.101(7)(h)1.e., and Tri-County offers no other support for its contention that the Town is only permitted to consider ingress and egress at the entrance to the quarry. Therefore, we reject this assertion.

¶38     Tri-County argues that none of the Town's determinations were "supported by substantial evidence, rendering the denial an arbitrary, oppressive, and unreasonable act of will rather than reasoned judgment." Tri-County contends that the Town must identify the substantial evidence supporting its denial at the time of its denial. *See* WIS. STAT. § 60.62(4e)(b)2. Although the text of the statute requires that the Town's decision on the application be supported by substantial evidence, we see no requirement in the text of § 60.62(4e) that the Town must identify the substantial evidence supporting its denial when it is made.[21]

¶39     Tri-County further argues that "[f]or certiorari review to be meaningful, … a [Town] must give the reviewing court something to review." *See Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals of Milw.*, 2005 WI 117, ¶26, 284 Wis. 2d 1, 700 N.W.2d 87. Here, the Town's written denial identified the reasons why the Town determined that the CUP application did not satisfy all of the applicable conditions in the ordinance, and its oral denial elaborated on those reasons. Moreover, the Town's appellate brief identifies the record evidence that supported each of its determinations. We are satisfied that the Town's denial was sufficiently detailed to permit us to evaluate its reasoning.

---

[21] We also note that Tri-County's argument overlooks the fact that the "substantial evidence" requirement applies both to the Town and to CUP applicants. Specifically, in order to be entitled to a CUP, Tri-County "must demonstrate that the application and all requirements and conditions established by the town relating to the conditional use are or shall be satisfied, both of which must be supported by substantial evidence." WIS. STAT. § 60.62(4e)(b)2. Tri-County's application did not identify the "substantial evidence" supporting its assertion that its CUP application satisfied each condition in the ordinance. We see no statutory basis for Tri-County's assertion that the Town would have a higher burden in this regard.

¶40    To determine whether the Town erred in denying the CUP application, we first look to whether Tri-County's application presented substantial evidence that it met the applicable conditions in the ordinance.[22]  Tri-County's appellate briefs are unhelpful in this regard.  Instead, Tri-County points to record evidence only to dispute some aspects of the Town's evaluation of some of the conditions in the ordinance.  For example, regarding the issue of road safety identified by the Town, Tri-County points to record evidence that the engineer for the Town of Vienna recommended against guard rails.  In the face of this evidence, Tri-County argues that the Town's belief that there should be guard rails was based on a personal preference and could not satisfy the "substantial evidence" requirement.

¶41    If the Town's denial of Tri-County's CUP application had rested solely on its determination that there should be guard rails on the access road, we would need to carefully consider whether the Town had substantial evidence to support its determination.  Here, however, the Town has identified numerous grounds for denying the application in addition to the guard rails.  For most of the other grounds identified by the Town, Tri-County simply argues that the Town was required to provide more evidence before concluding that the application did not satisfy the ordinance conditions.  For example, regarding pedestrian safety on the access roads, Tri-County argues that the Town did not conduct any studies or

---

[22] The Town contends that the word "all" means that "if at least one of the conditions is not met, the board may deny the [CUP]." *See* **Landis v. Physicians Ins. Co. of Wis.**, 2001 WI 86, ¶16, 245 Wis. 2d 1, 628 N.W.2d 893 ("[I]n interpreting a statute, courts must attempt to give effect to every word.").  We see no argument from Tri-County that the Town's interpretation is incorrect.

present data about the pedestrian traffic on the applicable roads during operating hours.

¶42    We disagree that WIS. STAT. § 60.62(4e) requires the Town to conduct studies or collect data in order to satisfy the substantial evidence requirement.  Here, Tri-County testified that its quarry operations would involve, on average, 50 truck trips per day with as many as 200 daily trips during busy periods.  One resident presented pictures showing how steep and narrow the main access road is at various points.  Other residents who live on or near the main access road testified that they walk on the road regularly, and that they observed regular use by other pedestrians, bicyclists, and farm equipment.  These personal observations are "facts and information … that reasonable persons would accept in support of a conclusion" that the increased truck traffic on a steep and narrow road could endanger current users of the road.  *See* § 60.62(4e)(a)2.  In turn, this conclusion "directly pertain[s] to the requirements and conditions an applicant must meet to obtain a conditional use permit," *see* § 60.62(4e)(a)2., namely, the ordinance conditions regarding road safety and road congestion, *see* DANE COUNTY ORDINANCE § 10.101(7)(d)1.a., e.

¶43    We see similar flaws in most of Tri-County's arguments that the Town's decision was not supported by "substantial evidence."[23]    Tri-County repeatedly argues that a "municipality must do its homework," but we see nothing in the text of WIS. STAT. § 60.62 requiring that the Town be the source of the

---

[23] Tri-County cherry-picks certain statements by the Town, such as one Town board member's statement that "we're here to serve our – people who voted us in."  Isolated statements that express personal preferences or engage in speculation do not negate the possibility that the Town's decision was also supported by substantial evidence.

"substantial evidence" supporting its denial. Instead, the text only requires that the Town's decision "be supported by substantial evidence." § 60.62(4e)(b)2. We see no reason that the Town cannot rely on facts and information from the public, as long as the facts and information amount to more than merely personal preference or speculation.

¶44 Tri-County contends that, in order to rise above mere personal preference or speculation, the facts and information supporting a denial of the CUP application would need to be presented by "a member of the public [who] conceivably possess[es] sufficient expertise to competently testify about or analyze specific data." Tri-County's argument dramatically overstates the gap between "facts and information" and "mere personal preference or speculation." If the legislature wanted to require municipalities to support their denials with expert testimony, the legislature could have included such a requirement in Act 67. We see no textual basis for Tri-County's assertion that expert testimony is necessary to satisfy the "substantial evidence" standard.[24]

¶45 Tri-County also argues that support for a denial of the CUP application must come "from an objective source." Once again, we see no textual basis for this assertion. We further note that, because the substantial evidence

---

[24] We observe that many of Tri-County's arguments rely on an altered reading of the plain language of the statute. For example, Tri-County contends that "reasonable government officials" would look to "professional appraisals" in order to evaluate the impact of a quarry on property values. The text of WIS. STAT. § 60.62(4e) only requires "facts and information … that reasonable *persons* would accept in support of a conclusion." *See* § 60.62(4e)(a)2. (emphasis added).

Elsewhere, Tri-County contends that the conditions proposed by a municipality must be "reasonable" and "achievable." As far as we can tell, nothing in Act 67 requires that CUP conditions be "achievable."

requirement applies both to applicant and municipality, *see* WIS. STAT. § 60.62(4e)(b)2., Tri-County's argument would mean that the applicant would also need "an objective source" for all of the data and information in its application. Further, Tri-County points to no statutory text to support this assertion, which would undoubtedly complicate and delay the CUP process.

¶46 The Town's appellate brief identifies the record evidence that supports its determination that the CUP application did not satisfy six of the seven applicable conditions in the ordinance. In addition to the testimony about the roads addressed above, the record evidence includes testimony from a resident who previously lived next to Tri-County's quarry in another town and experienced noise, dust, and increased traffic that interfered with her use and enjoyment of her property; an article with data from the World Health Organization regarding the adverse health effects of noise exposure greater than 53 decibels (in the context of noting that Tri-County would only agree to a noise limit of 75 decibels); statements about trucks traveling on the access roads that were based on a town supervisor's personal experience as a truck driver; and research compiled by residents to substantiate a likely reduction in property values.

¶47 In its reply brief, Tri-County contends that none of this record evidence rises to the level of substantial evidence within the meaning of WIS. STAT. § 60.62(4e)(a)2. As with its opening brief, we see little more than conclusory assertions that Act 67 created statutory subsections imposing a higher standard than "facts and information, other than merely personal preferences or speculation, … that reasonable persons would accept in support of a conclusion." *See* § 60.62(4e)(a)2. As set forth above, we disagree with Tri-County's reading of the statutory text.

¶48    Tri-County also repeatedly characterizes the facts and information presented by the public as impermissible speculation or merely personal preference.  For example, in arguing that the Town could not rely on the facts and information provided by a resident who previously lived near a Tri-County quarry operation, Tri-County contends that this resident was merely expressing "her own speculative preference for less dust and noise."  The ordinance at issue requires Tri-County to show that its "conditional use will not be detrimental to … the public comfort" and that "the uses, values, and enjoyment of other property in the neighborhood … shall be in no foreseeable manner substantially impaired or diminished."  *See* DANE COUNTY ORDINANCE § 10.101(7)(d)1.a.-b.  Tri-County has failed to persuade us that the Town acted unreasonably in concluding that increased dust and noise from quarry operations would run afoul of both ordinance conditions.

¶49    At any rate, all of Tri-County's arguments about whether the Town's decision was based on substantial evidence put the cart before the horse, insofar as WIS. STAT. § 60.62(4e), as we have noted, requires Tri-County to provide substantial evidence that it meets all of the applicable conditions in the ordinance. *See* § 60.62(4e)(b)1.  Accordingly, to overcome the presumption of correctness that we apply to the Town's decision to reject the CUP application, Tri-County would need to show us that it presented substantial evidence that it could satisfy the applicable conditions in the ordinance, which it has failed to do for the following reasons.

¶50    In its appellate briefs, Tri-County asserts that it submitted its CUP application in December 2022 and then "provided additional information and evidence to satisfy requests from municipal officials."  Tri-County does not, however, specify where in the record we can find the addendum or

supplementation to its CUP application that the circuit court referred to in its decision.[25]

¶51 The Town argues that Tri-County failed to show that it could meet the ordinance conditions, despite the fact that it gave Tri-County "multiple opportunities to explain and supplement its CUP application." We see no effort in Tri-County's reply brief to rebut this argument by directing us to the substantial evidence in its application, together with any addendum or supplementation, that it met all of the conditions in the ordinance. An appellant's failure to respond in a reply brief to an argument made in a response brief may be taken as a concession. *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

¶52 Tri-County instead argues that the Town was "hid[ing] the ball by not proposing conditions prior to denying the CUP" application and that it would have needed to be clairvoyant in order to "me[e]t or … agree to meet conditions no municipality ever proposed to it." This argument goes nowhere, because the significance of the ordinance should have been abundantly clear to Tri-County throughout this process. The first section of the CUP application requires Tri-County to complete an information sheet addressing the eight ordinance conditions. When the Town asked Tri-County to supplement its application, it

---

[25] Tri-County supports its assertion regarding this "additional information and evidence" with a string cite to "R.49:3-8[;] R.50; R.117; R.119; R.123; R.125." The first document cited is the County's request for more information, and the last four documents cited are the transcripts of the Town's public hearings. Our nonexhaustive review of the record does not identify the referenced supplemental materials. Tri-County apparently expects us to comb through these lengthy sections of the record to determine what "additional information and evidence it presented." We decline to do so. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 ("We have no duty to scour the record to review arguments unaccompanied by adequate record citation.").

reminded Tri-County that it needed to satisfy the eight ordinance conditions and even attached the conditions. The question of whether the application satisfied the eight conditions was raised at multiple Town board meetings prior to the Town's denial on August 14. In light of the foregoing, we are unpersuaded by Tri-County's assertion that it was surprised that its CUP application needed to show that it would meet the applicable ordinance conditions.

¶53    In sum on this issue, in the absence of an initial showing that Tri-County presented substantial evidence in its CUP application that it could meet or would meet all of the applicable ordinance conditions, and for all of the other reasons discussed, Tri-County cannot satisfy its burden on certiorari review. *See Ottman*, 332 Wis. 2d 3, ¶50.

## CONCLUSION

¶54    For the foregoing reasons, we conclude that Tri-County is not entitled to certiorari relief.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.